Good morning, Your Honor. I would like to reserve three minutes for rebuttal. Yes, sir. That's fine. I think that this case, the facts of this case could be in a textbook about why we need due process, why due process needs to be there to temper state action. I think that due process serves two functions. The first is to obviously prevent against a wrongful taking. But the second, and it's intertwined in this case, is that it sort of acts as a safeguard against wrongful state conduct. Could you detail for us how due process was deprived in this case and precisely when the deprivation occurred? Well, there was a, the state and the CYS caseworker secured an ex parte court order on May 5th, 2006 and removed the child. You don't quarrel with the right of the state to do that? I don't quarrel with the right of the state to obtain, in an emergency situation, obtain an ex parte order authorizing removal of a child. We don't quarrel with that, but I think that it's clear that after that, after that removal, that some procedural due process is due. This court has never, to my knowledge, I haven't seen anything in the Third Circuit, has ever seen a case like this, where there was no hearing automatically provided to the mother once her child was removed. Well, the mother did trigger an application to get a hearing, did she not? Within days after the removal of the child. The mother had, it was actually, I think she filed the habeas corpus on May 27th, so that would be 19 days after the initial seizure. The hearing occurred on June 14th, so that would be approximately six or seven weeks after the seizure. But if I can just talk about the habeas corpus proceeding for a second, the, you know, part of due process is notice. And so you have a situation here where you have a, you know, just a mother, she has other children, she's single. State comes in and takes her kids, and they don't give her, they don't say why. They don't tell her what she could do if she thinks it's wrong. They don't tell her what remedies she might have. And so she goes, hires a lawyer, the lawyer files a habeas corpus proceeding, and it turns out that, well, based upon what the county did in this case, she sees the wrong person. What would be the remedy that you think is appropriate there? Assume, just for the sake of discussion, that they had done what you say they should have done, given her notice and provided a hearing, and the judge said the same thing that the judge said ultimately here. If the outcome would be the same, is there anything more than nominal damages? Well, the issue is that in the habeas corpus proceeding, well, we have the issue of what the caseworker did in terms of concealing evidence. But that's your substantive due process claim, right? Let's stick with the procedural due process here for a minute. Is there anything more than nominal damages that she could reasonably expect to get under these circumstances, given that there ultimately was a hearing and a determination by a judicial officer was made after she had a chance to make her pitch? Well, I'm going to argue with that, because there was a hearing, and the substantive due process is intertwined with the procedural due process, because after the hearing, the judge says, I'm going to take this under advisement. And five days later, there's an ex parte contact between the caseworker and the judge, and we have presented evidence that the caseworker misled the judge at that ex parte hearing. And then three days later, the judge enters an order saying, you know, based upon an indicated finding, I'm going to continue this separation of mother from child. And then three days later, the judge enters the order in the habeas corpus proceeding, which says, basically, you sued the wrong person. Sure. And we've read the record. We're familiar with the record. But let me just pause on this for a minute. Is your position, then, that because of the ex parte contact after the habeas hearing, that she was completely denied due process? There was no procedural due process here? I think that in terms of we're here on a summary judgment. I think that in terms of the summary judgment standard, there's a factual dispute about whether that hearing provided her with procedural due process. I don't think that her initiating a hearing satisfies what the state has to do, which is provide an automatic hearing. And for purposes of my questioning, I'm giving you that for purposes of this. I'm trying to figure out remedy at this point. Well, I think that there's two remedies. I think, number one, at a minimum, we have nominal damages because there was a denial of due process. And number two, I think that there's a factual dispute about whether Judge Casio, if he had known all of the facts, would have done what he did on June 23rd. And I think that only a jury can decide whether the casework is so tainted that habeas corpus proceeding, that she wasn't granted due process. And if Judge Casio had known that the child had gang-raped and had lost weight. But Judge, she had an opportunity to contest Judge Casio's ruling. She was given a chance to contest it the following day. Wait, which? Judge Casio's final order. Well, I suppose there could have been an appeal, but Judge Casio basically said, well, they never took custody here. And so it gets to be pretty confusing at that point. Isn't that a true statement? I mean, a habeas corpus petition is telling the government, give up the child, but the child was in the custody of the father. That's right. And that's why notice would help. Was there also a finding in that habeas corpus proceeding that she had, in fact, abused the child? The child was subject to neglect? First of all, I would say that's dicta in the order. Second of all, Judge, that came after the ex parte trial. That might have been dicta in the habeas proceeding, but there was another order following the habeas denial in which, in fact, she was determined to be a neglectful parent. No, I don't believe that. I don't believe that there ever was any. There never was a hearing where she was confronted, where the state had the burden of saying, this is why we took your child, and you can defend against that and we'll give you notice. The chronology is habeas corpus was, the hearing was on June 14th. The caseworker saw the judge on June 23rd, and the judge entered the ex parte order on June 23rd. That was the initial or the final order? That was, well, that was just the order he entered based upon the contact with the caseworker, and then on June 26th, he entered his habeas corpus order. He entered the order dismissing the habeas corpus proceeding. Then there was no, she was in the holding. But there was a final order giving the father custody of the child. Was there not? No. Well, the June 23rd ex parte order continued the father's custody. The June 26th habeas corpus order said, in safe placement of the child with father is necessary and appropriate considering the serious medical, continuing medical evidence of failure of the child to thrive while in mother's care. And she had a chance to contest that final order. Did she not? No. If you're saying she had a chance to appeal that, I suppose that she could have taken that up to superior court. But what we're saying is that the caseworkers, the intervening conduct of the caseworkers, going to the judge three days before he entered this order, while he's considering what to do with this, how can we say that there's no factual dispute about whether there's a substantive and procedural due process violation? Well, we've been talking about the procedural stuff. But let me ask you something that bears on both. How can there be municipal liability here? How do you make a Monell claim stick? Well, first of all, I think that throughout the record, we've established that they have a policy. And they've admitted it. For instance, when we file our summary judgment, you do a material statement of unsubstantive facts. And we said that CYS has a policy of preventing non-supervised contact between the parent accused of abuse in a child-life report and the child who's reported victim of abuse pending the investigation of the report. They admit that. They admit that there's a policy that they follow in every case where they have this ex-parte contact. And there's no hearing provided. This isn't a case. Okay. Now you're talking about the procedural. Let's shift for a second and talk about the substantive. How could there be municipal liability there? Who's the policymaker? What are you pointing to? I think that in terms of municipal liability on the substantive due process, the fact that in every instance they enforce, once they receive this child-life report, they enforce a no contact between the parent accused of abuse. Does that shock the conscience? Is that egregious and outrageous behavior? If you do it in every case, no matter what the circumstances are, I think it does. And what was your evidence that they do that in every case? What evidence have you given us? I think it's in the request for admissions that they admitted that there was a policy to that effect, that they admitted the policy. We gave you the deposition testimony of the administrator saying, well, sure, in every case we do this. In every case. Your substantive due process claim, as I understood it, was ever falsified evidence. She fabricated evidence and lied to the court, and then both signed off on it. That's what I thought your substantive due process claim was. That's one problem with the substantive due process. A second problem is, you know, while the initial taking, there was a child-life report by a doctor, if you look closely at the initial taking, you know, this is a child that had been seen by three doctors the week before the initial taking, or 10 days before the initial taking. Children's Institute, she'd been seen by Child Welfare, she'd been seen by Pittsburgh doctor, Dr. Chang. There was a home visit. The Child Welfare worker says, healthy, happy baby, beautiful baby. So all of this happened 10 days before the taking, the interruption, and... Is your claim of fabricating evidence or withholding evidence? No, I just think that, you know, if the case worker thought, well, we need to do something, she didn't have to necessarily seize the child. She could have started the dependency. Isn't that a pretty tough road for the homeless to say, to say that it's egregious conduct, because there's some evidence that is favorable to your client, but they took steps anyway? Well, it's a harder argument, but the only thing I would say is that the Juvenile Code of Pennsylvania law contemplates that some juvenile court proceedings are actually started by a petition, and you actually have a hearing before you lose your child. So it's not that you have to lose your child every time there's a juvenile court hearing. Let's assume that she had a due process right to a hearing immediately after deprivation. We held in Ernst v. CYS, in case you're probably familiar with that, CYS defendants are entitled to absolute immunity for their actions on behalf of the state in preparing for initiating and prosecuting dependency proceedings. Isn't that exactly what the service workers were doing here? They marshaled the evidence and presented it to a judge and obtained an order. I have several comments on that, if I can. Number one, there was no dependency proceedings. So you'd have to say... But characterizing it as a different proceeding, is that going to change the immunity aspect of it? Yes, it does, because we cited the case of Odd in our brief, Odd being the loaner or something. The third component of prosecutorial immunity or judicial immunity, if there's some procedural safeguard that's going to protect citizens from the bad prosecutor, the bad casework. Isn't this a little ironic, Mr. Oltz? On the one hand, you're saying that you should ignore the fact, court, that it's not a dependency hearing for purposes of deciding whether procedurally they're required to give a hearing. This distinction that the municipality and the individual defendants are making in saying it wasn't a dependency hearing, it didn't go to state, it was a transfer, that's hogwash. Don't listen to that. And then when it's time to talk about immunity, you're saying, hey, hey, don't forget, this wasn't a dependency hearing. Can they have it both ways? I think they stand for the same proposition. In a dependency proceeding, you have immunity because there's a state hearing. The question of whether there's a hearing isn't state law, it's federal. And so the fact that there is no hearing, what safeguard is there to protect against the bad prosecutor or the bad caseworker? Suppose the prosecutor could throw someone in jail and there wouldn't be a trial. What's to protect them? Well, Ernst seems to indicate, doesn't it, that we look to the fact that there's judicial process going on. That's a safeguard. And we look to the institutional pressures that can be brought to bear by higher-ups in the organization of which the social workers are a part. Those two things are the same, whether it's the proceeding that was going on here or whether it was a dependency proceeding, aren't they? No, because here there was no hearing. You don't question the fact that these workers, child youth service workers, have to make prompt life and death saving, life and death decisions. They have very little time to really think about what they're doing. In some cases they do, not necessarily in this particular case. Now remember, Dr. Lindblad saw the baby on April 18th and he didn't think that he needed to file a report until after he talked to the caseworker two and a half weeks later. Well, that's not his evidence. His evidence is he thought he needed to do it but he hadn't gotten around to it. Maybe not a great thing, but his testimony, I thought, was pretty clear. I thought there was a problem. I thought there was a risk of Munchausen by proxy. I was going to do it. And she didn't cause me to do it. I was going to do it. He also said, well, I'm going to schedule her for another 60 days. And this particular failure thrives. It's a disease that you follow in periods of months as a matter of days. Well, that answers the question. This is not necessarily an emergency situation where the child is subject to abuse. This is neglect. Good, Mr. Earls. Thank you very much. You're going to get some more time on this. Thank you. Ms. Jones. Thank you. Judges, we ask that we have some sort of kind of uniform law of risk decisions. When we look at the law and the facts, these decisions that you have are really quite clear. Rather than assessing the plaintiff's version of events comprised of misrepresentations by caseworkers, lies, conspiracy, in essence, with the court process. Well, given all that. All of those things. Given all of these somewhat out there. We have said time and time again, and other courts have said the same thing, that a mother who is deprived of the child is entitled to an immediate prompt hearing concerning the deprivation. The courts have said that when dependency or custody has changed by virtue of the state taking custody, which is a big, big dramatic change. Really? So your position is we can take your child from you, and as long as we don't keep it, as long as we're not the ones keeping it, we can take your children away from you and not tell you why and not tell you what's going on and not tell you how to deal with it and not give you a hearing, and that's all good. But that's the import of your distinction, right? Your distinction is if we're not the ones keeping it, no problem. No, I think it's important to remember. I think it's important to understand it for purposes of whether these certain specific procedures have to be engaged in or whether there's a bigger picture to review. That is, is there an opportunity to be heard and when heard? Well, there's an opportunity because there's a courthouse somewhere in the municipality or somewhere in the county, but how does she know? How would she know that if you take my child, I can go get a hearing immediately to get my child back? Well, first of all, in this particular case, she had a lawyer who was on the telephone with her. But nevertheless... You mean while the child was being taken away, she was on the phone with a lawyer? But nevertheless... That's the rule that we should have. People who have the good judgment and the money to hire lawyers, they get due process and others don't. Just actually, I think it's interesting. Your court has held before that it's appropriate to go and obtain an ex parte order. And generally, so long as there's some process and procedure and hearing. Opportunity for that... That's what we're trying to get at. What was the process? What was the procedure here? That happened. Number one, she did have a lawyer, so I think it's a fact we have to be aware of. I don't know that that really satisfies the due process concern in this case. But she had the hearing. She had the hearing because she went and got the hearing. That's the... I feel like we're talking past each other here. What we're trying to get at is, what in the law is a basis for saying that the state, the municipality, is permitted to take somebody's child away and not give notice in a prompt hearing? Because that's the position you've taken. The position you've taken is, as long as we don't keep the child, you don't get notice from us about a hearing, and we don't give you a prompt hearing. You can come get one, and she did, but we're not going to tell you about that. It's all on you. That's the position that's been presented to us, right? Well, not entirely. The position is that we took action, and we're saying, for instance, where that action could be taken initially. That we then had a system in place where she had the opportunity to have a hearing. She had the opportunity? That's like saying... Well, I mean, I guess anybody in America, I guess, by that theory has an opportunity because you can go to court and sue somebody. I mean, she went and she petitioned. Isn't the obligation on you people to give notice at a prompt hearing? Isn't that the due process that our precedents require? I think there is some perspective, some element of that to consider. But it's also important to put in the context of whether or not this is one of those circumstances when those requirements kick in immediately. Or do they kick in over the course of the process? Well, taking a child away from a mother and not offering much of an explanation happens to be one of those instances, it seems to me, where due process is critical. But the child is with the father, the child is under medical care, the child is not in a position where it's being bounced around. This is not a situation where CYS took its action on this. You think that taking the child from the mother and giving it to the father's custody satisfies due process? I think it's something to consider in determining whether or not the child's interests are being impacted and the mother's interests are being impacted. Well, certainly the mother's interests are being impacted. From the mother's perspective, what matters is you took my baby, right? I mean, the fact that you didn't keep it, that you gave it to somebody else, is that really, as a legal matter, pertaining to due process, even relevant? I think it is, depending on who it is you took the child from. There's no distinction. I can see how it could bear on substantive due process if you took the baby away and you gave it to a convicted child molester. I can see that having substitute processing. But as to procedural due process, which is what all the questions so far have been about, I'm having trouble following your logic that it matters who we give the baby to. Isn't the only thing that matters, we took it away? I think both factors matter, and I think it also matters that there is an opportunity and that the delay for the hearing is not substantial. And I think when you look at all those facts in this case... Well, when you say opportunity, could you elaborate what you mean by opportunity? You mean there's a courthouse somewhere with a judge who might hear her claim? Well, she did file the petition, but there's a couple of ways... Don't you think you have, in terms of due process, a responsibility to notify the mother that she has a right to request a hearing and where she can make an application for that hearing? I think if the dictates in the parameters of the Juvenile Act or the CPSL are in place, then yes, because it's very clearly set forth. But this is not one of those situations. And while I realize it's different, it's slightly different, but yet still important, that this court has held before that the process can be delayed so long as that opportunity exists. Why does it matter? What legal precedent can you point to? I guess that's the easiest way to put the question. What can you point to as authority for the proposition that the context in which you remove the child, i.e., whether it's in dependency or in some other proceeding, makes a difference to the due process obligations that the sovereign has? Well, the precedent that exists always in the context of dependency. It is always in the context of dependency. It's clear that that's the circumstance when the dictates and the immediacy is more critical. Why is that more critical? As a logical matter, why is it from the mother's perspective more critical who the child goes to once you take it? And what can you point to in the law that says that satisfies due process for you to go to court and get a habeas petition as opposed to us giving you prompt hearing? Well, I think there have been decisions in this court where having a dependency situation existed and the delay was still considered appropriate. So, first of all, there's been precedent where a delay was considered appropriate under the facts. Secondly, we are not talking about CYS on its own without ever having court intervention taking this child, which, for example, the Croft decision was a different court decision. That's not what happened here. We had three, ultimately three, court orders from Judge Cascio permitting the taking with complete visitation permitted to supervise. It wasn't a complete separation. So is the theory that the process she's due is process that's taking place away from you that you don't know about? Not necessarily because it was referenced in all of these orders. She was given the opportunity in the orders to have other proceedings. Oh, is that right? Was she served with an order when that child was initially taken? She was given the order. And did that order contain within it instructions for appealing a decision to deprive her of her child or replace the child with somebody else? Not specifically. No notice of a right to contest the deprivation? No notice as to where she can go and have a case heard? It did not. That's in essence because the precedent has been all of the situations. Well, it certainly wouldn't have hurt to put that in the order. It's simply a simple two sentences. Well, we certainly can all learn about overprotective processes. Is that overprotective? Does it strike you as overprotective to give people notice and an opportunity to be heard when their children are being taken away? I don't mean overprotective in the majority sense, but simply in the legal sense, that there is a standard based on the dependency process and there is not one for a non-standard situation. And the facts of this case, which again I believe this court can review, demonstrate that there wasn't such egregious behavior going on. This person, this child was being cared for under medical attention by many specialists, not just a general doctor. This father was checked out, determined to be a good location for the child. It may surprise you to learn that judges make mistakes and that that judge may have made a horrible mistake by placing that child in the arms of an abuser or something else. And you're saying that under those circumstances, because the facts were found by that judge, that it's in medical care and all that, there's no entitlement to contest that immediately. I'm not saying there's not entitlement to contest it. The timing may be impacted. And I'm also not saying that there were facts here that give rise to that kind of argument. There can be a basis to say that he was perfect, or she was perfect. And in fact, she was perfect on the very point that this federal court... But if all decisions were perfect, we wouldn't be concerned about process. We have to establish due process for the claims that are out there someplace that may not fit exactly into your factual situation. I appreciate that. And I think so far the precedent is extremely clear that in a dependency procedure, there are very strict set forth guidelines. And this is a really unique one. But it doesn't fit a parameter where the ability to be heard did not exist, where multiple opportunities for judicial review occurred, and where, with assistance of counsel, issues were brought to the court that are now being... The judicial review that did occur was not with the mother president, was it? It was not. But there have been cases by this court that said that that's not necessary. They were ex parte proceedings? They were. And you've got a case someplace that says that a circumstance where there are ex parte proceedings in and of themselves satisfies the due process rights of the person whose rights are being deprived. There's cases from this court that say that as long as you obtain orders, use the judicial process to review it, there are safeguards built in by that process, which is just a question of miserables, that it's permissible to obtain the ex parte order. In many cases, they talk about whether subsequent hearings... Right. That doesn't really speak to the point about what her right to be heard is, right? I mean, by definition, it's her right to be heard we're talking about here, right? Yes, but that right has been held very clearly to be not necessary in every situation before an ex parte order. I don't think anybody's disagreeing with you about that. It's post-definition. Skipping over the failure to provide notice at the first order and in the initial taking, what justified the second order, which occurred six weeks later, without giving her notice that she could appear and contest that order? Under the procedures for the investigation of the CPS case, there's a requirement for timely report back of the findings, and under the existing order, there was a necessity to go back and revisit whether there was going to be a finding, an indicated finding or not, to make sure that the determination by the CYS board was complete. That is the timeframe around which that second order was issued. I understand the timeframe, but what justified the ex parte order? In other words, the signing of an order that, I suppose, permanently placed the child with the father in terms of custody? Well, first of all... Without giving her notice that she could appear and contest the order. It wouldn't have been permanent because it was already after the filing of the petition for habeas, so the hearing on the petition for habeas was set. I think, frankly, it was more of a pro forma. The timing for the original CYS investigation was kind of due. It's necessary to either continue that order in place. The hearing was scheduled some days later, so the second order was simply due to the finding and conclusion of the investigation. And at that time, the hearing was set for the merits of the discussion. So the hearing was going to be held, the opportunity existed, and on the 26th of June, which was three or four days later, than the second ex parte order, the ultimate finding was made. And in that finding, it was clear from the court that there was a concern about the mother's case. So, you know, after time for an opportunity to be heard, after testimony from a couple of people, including the caseworker, the mother was present, the opportunity existed, and the court still filed on the merits that there was an appropriate basis to be seen. But you were aware at that time that the mother had a lawyer, right? There was a lawyer, yes. That lawyer was not notified that a final order was about to be entered. There was some question in the record of whether that lawyer was given that status quo. But again, it was more of a process under the investigative procedure rather than changing the status of anything. Don't you think that's a good idea in terms of procedure, knowing that a litigant has a lawyer to notify the lawyer that we're about to enter an order that may affect the rights of your client? I don't disagree. It would be important to keep them in the loop. It didn't change the status of anything. And with the hearing scheduled only three days later, it did not substantially differ. And interestingly, and ultimately, that order stayed in place after the hearing when there was an opportunity to be heard. And a further interesting point on that issue of almost causation and the like is that after years of a custody battle, custody remained within the law. So I think, again, we get back to that. Yeah, but you want us to decide it's a due process violation based on what happened down the road. No, except it's appropriate to consider whether there would have been a different result. And this court has determined that in a number of cases. So there was not a different result. I don't believe the issue of whether that hearing occurred before that second ex parte order or three days later when the merits discussion on the matter makes a difference relative to those issues. Can I ask you questions about the subs? Because we've spent your time on procedural issues right now, but there's been subs of due process claim in here. And I'd like you to speak, if you would, to the district court's determination that there was no dispute of material fact that would prevent the grant of summary judgment to your clients on the substantive due process claim when the allegations are, and there's some evidence, testimonial and at least documentary, if you believe the testimony, that Ms. Ehlers made up evidence, presented fabricated evidence, just jingled up to get the results she wanted. That's their position. That's their allegation. They point to a specific document for purposes of that and some testimony. How does the district court rightly get around that? First, this was summary judgment and not a motion to dismiss. So we have to go to the evidence and not just the allegation. Secondly, the shock to the conscience standard is extremely high. Would you agree that if we were to accept their version of the facts and evidence as true and that Ms. Ehlers made this stuff up, that that would shock the conscience? First, we made that argument on a motion to dismiss, so I agree that if it's an early day, it's a different story. In this case, not necessarily. The evidence is very clear in the record. While there remains this bold allegation, evidence does not need that bold allegation. She made notations of her own in a record, not altering an official medical record in anyone's files, but her own ones. But that's the basis on which the decision of the judge was made, right? I mean, she – Well, I'm sure you'll help me out if I'm wrong here, Ms. Jones, and I don't know the record with the depth that the advocates who've lived with her have, I'm sure, but my understanding was that she made a notation showing that the weigh-in on the 5th and the 8th of May, were with the child clothed. That was her notation on the record, and that she did that according to the plaintiffs so that she could justify having presented to the court information that left those data points out. That was the testimony, wasn't it? The testimony was that she made personal notations for her own edification to understand what the weights were – how the weights were done, what they were about. And then she presented a summary to the court, but the summary did not have the same level of detail, nor those same documents. So it was in her determination of whether this report would be indicated or not, but not for purposes of presenting any kind of submission to the court. It was her assessment of the information. So it's a – according to them, it's a misrepresentation of facts, deliberately so, because she just left this info out. And I guess what I'm asking you is, if that's true, is that not something that is akin to the destruction of evidence in cases where we've said prosecutorial misconduct exists and that there's no absolute immunity? It is not, in my view. First of all, she is not required to serve as an advocate for the position of the mother with the child. The child, yes, generally, but not the mother. She's in a position to serve the best interests of the child, not advocate what the mother might argue against. Number two, she was not making a submission or preventing someone from getting information, as in a prosecutorial misconduct situation. She was assessing that for purposes of her own determination of the indicated steps within the investigative process. So let's say, for sake of argument, that she didn't include it. When you look back at Dr. Lindblad's assessment and other medical providers, it's important not to just look at one data point or two, but a series of information to make a determination. But wasn't leaving those two pieces out crucial? Because if those pieces were in, isn't the evidence that the failure to thrive issue would not have existed because it would have shown an increase in the weight during her custody? It's those specific data points being left out that sustain the argument of failure to thrive. With those in, she couldn't make that same pitch, could she? No, I don't think that's true. First of all, the May 5th was done after the child was taken, so it certainly had nothing to do with the first one. May 5th and 8th were the days she took the child to the doctor, and the 8th was a subsequent visit that she learned about later. She didn't necessarily have it on May 8th, but she learned about it later. Even Dr. Lindblad said looking at all of those later down the road is important when you take the whole picture, but looking at one or two doesn't necessarily make a difference. And the key was this length of time within which the child was under the mother's care and not thriving, and the length of time when the child was under the feeding institute and then under the mother's care. Subsequently, it's been dramatically improved. One more question. You said, and maybe you can't answer this, 710A of the appendix, this is the sheet we've been talking about which has the notation that Ms. Eller made of dressed. Can you tell me, do you know, is this her handwriting across the bottom of here, or were all the handwritten notations except for the words clothed written on the original record? Do you know the answer to that? I believe that she made these notes, all of them, to give her ability to make decisions on what she would take. These were not something that she represented or anything other than her own notes. So there's no, when you look at the big picture, any kind of notice that supports the Sharps and Ponson standard, particularly when, to make a case and argument follow, you have to have all of these experiences and biases and integrity by judicial officers to make this the way it should be. I know it's not part of the record, but could you bring us up to date on the status of the parties? Where is the child now? The child and the mother and father, to my knowledge, have shared custody, although the father has a greater percentage of the time than the mother. It was part of the record at the end of the last quarter, reflecting the fall terms. That's my understanding of that. Thank you, Ms. Jones. Thank you. Mr. Owens? In response to the last question, Your Honor, actually it's equal split custody now. And it took a while to get back to that point, but that's what it is. Thank you. And if I could just maybe clear up a couple points. Going back to our material statement of facts, which was brought to mind on the record 286, he said prior to the entry of the order of the habeas corpus case on June 26, 2006, neither B.S. nor her counsel were notified that Eller had presented the summary to Judge Cascio or that he had entered the June 23rd order, and they admitted that. And so there was no notice of that. What's your response to your colleague's assertion that two data points out of a whole series of months of data points, it's no big deal, it hardly shocks the conscience? Well, except if there had been a hearing and the evidence had come out that this is why you have to have procedural due process, you can make that argument now retrospectively, but that even Lindblad would say, well, maybe we shouldn't have taken the child from the mother if that weight was carried forward. Of course, the mother would have to have posited the child for us to see whether that weight was going to be carried forward. If the judge had heard that testimony on May 8 or May 9, oh, Judge, I told you last week that the child was 19 pounds and you told me I could take the child out of the house. Well, it turns out that the child is actually 22 pounds. Maybe the judge would say, well, we can put the child back in the house and I'm going to let the agency supervise because child welfare isn't just take the child out. Was the issue that the weight had increased or that the weight had not changed? Well, what happened was that the weight increased between the last time Lindblad saw the child and the day that the caseworker took the child. And that was over a span of how much time? 17, 18 days. So the weight was such that Lindblad would say, well, actually she's back on the growth chart now if that weight is true. And it was taken at the doctor's office in Eller's presence. Eller took the child from the mother's house to the doctor's office and the child was weighed in her presence. So she knew what the child weighed that day. So if you have a hearing, the opportunity for hearing and the evidence comes out, then, well, maybe the judge says put the child back. Does a state court finding that the child apparently was neglected,  undercut your substantive due process? I don't believe that that was ever a state court finding. We looked at that last paragraph. Well, isn't the mother in this case on a registry in Pennsylvania of abusing parents? I don't know if I have the term correctly. If I could just sort of tie that into the whole scheme of things. The CPSL is a reporting statute. It says, you know, we encourage people to encourage professional, like Joe Paterno, for instance. If you know about child abuse, you have to report it. And then there's an administrative process that we make a record of who is indicated and who is founded and who is not founded. But that statute is separate from the Juvenile Act. Except that statute says, well, if you think that a child is in danger, then use the Juvenile Act to have your hearing, determine whether the child should be removed from the home. So the CPSL. I think you're skirting around the question that I had asked before, which is basically, isn't she on a list of child abuse parents? That was a decision by a court. Did she not appeal that decision? Did she not have an opportunity to contest that finding? The way that statute works is that Eller made the finding based upon what we contend is bad evidence. And you go on the list. And you have an administrative appeal that you can challenge that finding. Did she appeal administratively? She appealed that. And after we started this case, we discontinued that action because we didn't think we had to exhaust state court remedies. And so she did appeal it, but it was not pursued. But that statute, it's just a registry. It has nothing to do with, you know, if you're on that registry, you have children living with you. And so that was just our... And that's what... Finish up your point, Liz. We have to get to the next case. I think that there was no judicial determination. It was only Eller's finding that becomes registered with the state. And there's a subsequent appeal to the Department of Public Welfare, a hearing officer. And you can have that removed if you convince the hearing officer that it was wrong. Thank you, Mr. Olds. Thank you. Thank you both for very good arguments in a very difficult case. We'll take it under advisement.